IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ALFREDO BERNAL, JR., #363884, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 3:12-CV-3969-P-BK |
| | § | |
| WILLIAM STEPHENS, Director, | § | |
| TDCJ-CID, | § | |
| Respondent. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Petitioner, a Texas prisoner, filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons that follow, it is recommended that the petition be denied.

### I. BACKGROUND

Petitioner was convicted of aggravated rape and sentenced to 25 years' imprisonment. *State v. Bernal*, No. F83-89839 (195th Judicial District Court, Dallas County, 1983). At issue in this case is the April 8, 2011, revocation of his release to mandatory supervision for failing to abide by the terms and conditions of his release. On October 13, 2011, the Classification and Records Department (CRD) denied his Time Dispute Resolution, concluding he was not entitled to street-time credit due to his current holding conviction. The Texas Court of Criminal Appeals then rejected his state habeas application. *See Ex part Bernal*, No. WR- 61,421-03(Tex. Crim. App. Jan. 23, 2013) (denying without written order on trial court's findings without hearing).[1]

In October, 2012, Petitioner filed the federal petition presently at issue, which he later amended, to challenge the revocation of his supervised release under the Due Process and Ex

---

[1] Respondent filed the State Habeas Court Record (Doc. 20-3) and the Parole Packet (Doc. 23-1) electronically.

Post Facto Clauses and the Thirteenth Amendment. (Doc. 3 at 7-8; Doc. 25 at 7-8). Respondent argues the petition is time barred in part and meritless, and Petitioner disagrees with those assertions. (Doc. 21, 30).[2]

## II. ANALYSIS

### A. Statute of Limitations

Here, it is undisputed that the limitations period began to run under 28 U.S.C. § 2244(d)(1)(D) on April 8, 2011, the date of Petitioner's parole revocation. *Stone v. Thaler*, 614 F.3d 136, 138 (5th Cir.2010) (limitations period begins on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."). Respondent argues (1) Petitioner's time credit claims (claim 4(c)) must be evaluated separately from the claims challenging the parole revocation (claim 1-4(b)), (2) he is not entitled to statutory tolling for claims relating to his parole revocation claims, and (3) he should have filed separate state habeas applications – one challenging his parole revocation claims, and a second one after he received a ruling from the TDR, challenging his time credit claim. (Doc. 21 at 7). In support, Respondent asserts that a Texas prisoner must present a dispute regarding time credit to the TDR, but that "a TDR [form] will not toll the statute of limitations for claims resulting from the same revocation but not pertaining to the time-credit dispute." *Id.* Respondent's sole authority is *Fife v. Director*, 2011 WL 5217848, *2 (E.D. Tex.

---

[2] In his motion to amend, Petitioner concedes his motion to stay is moot. (Doc. 10, 19 at 1). In addition, even though Petitioner was recently re-released on mandatory supervision (Doc. 34), his habeas petition is not moot because his parole term has not ended and he may be subjected to state parole oversight for a longer period than if there had been no revocation. *See Villegas v. Thaler*, 480 Fed.Appx. 761, 763 (5th Cir. 2011) (unpublished per curiam) (holding "extension of . . . parole discharge date is a collateral, if not direct, consequence of the parole revocation," and the petitioner "is therefore unlike the inmate in *Spencer [v. Kemna*, 523 U.S. 1, 7 (1998)], whose challenge to a parole revocation after he had completed the terms of that revocation was moot").

Oct. 6, 2011), adopted 2011 WL 5196720 (E.D. Tex. Oct. 31, 2011). However, neither *Fife* nor Respondent's answer addresses Petitioner's fair concern that filing separate state habeas applications addressing his parole revocation and time credit claims, which stemmed from the same course of events, "would subject the subsequent petition to dismissal with prejudice under the abuse of the writ doctrine." (Doc. 30 at 7). Therefore, the Court rejects Respondent's request to dismiss in part on limitations grounds.

    B.    **Claims Lack Merit**

Habeas corpus relief is precluded unless the state court's adjudication on the merits --

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Petitioner bears the burden of establishing that he is entitled to relief. *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). That burden is "difficult to meet," however, as the decisions of the state court are reviewed under a "highly deferential standard" and afforded "the benefit of the doubt." *Harrington v. Richter*, 562 U.S. ___, 131 S. Ct. 770, 786, 788 (2011); *Woodford*, 537 U.S. at 24 (citation and internal quotation marks omitted).

Procedural Due Process (Claim 1)

Petitioner challenges the revocation of his mandatory supervised release on procedural due process grounds, namely failure to make written findings of fact and sufficiency of the

evidence. (Doc. 25 at 7). He also claims he received "inadequate predeprivation notice regarding conditions and penalties." *Id.* The state court summarily rejected his claims.[3]

Petitioner's revocation proceeding complied with the minimum due process requirements set out in *Morrisey v. Brewer*, 408 U.S. 471, 489 (1972).[4] At issue here are the written findings of fact and sufficiency of the evidence. Petitioner, however, received a copy of the results (titled "Hearing/Waiver Results"), which he attached to his state habeas application. *See* Doc. 20-3 at 36-40, 41–43. The hearing officer also issued written "Fact Findings and Conclusions," which are enclosed in the Parole Packet, identifying evidence and reasons for supporting the revocation decision. (Doc. 23-1 at 10-14). Even if the Parole Packet was not presented to the state habeas court, as Petitioner suggests (Doc. 30 at 18), it is not new evidence, but merely a record of the state revocation proceedings. Therefore, the Court overrules Petitioner's objection under 28 U.S.C. § 2254(d)(2).

Nevertheless, judicial review of a decision to revoke parole "is quite circumscribed." *Villarreal v. U.S. Parole Com'n*, 985 F.2d 835, 839 (5th Cir. 1993). Due process only requires that there be "some 'evidence' in the record to support the . . . decision" to revoke parole. *Id.*;

---

[3] There is no distinction between parole and mandatory supervision for purposes of revocation. *Coleman v. Dretke*, 395 F.3d 216, 219 n.1 (5th Cir. 2004).

[4] To comply with due process, revocation procedures must provide (1) written notice of the violations charged, (2) disclosure to the parolee of the evidence against him, (3) the opportunity to be heard in person and to present witnesses and documentary evidence, (4) the right to confront and cross-examine adverse witnesses unless the hearing officer finds good cause for disallowing such confrontation, (5) a neutral and detached hearing officer, and (6) a written statement by the factfinders identifying the evidence and reasons supporting the revocation decision. *Morrisey v. Brewer*, 408 U.S. 471, 489 (1972).

*Morrissey,* 408 U.S. at 480 (a revocation proceeding is not part of a criminal prosecution).[5] Here, contrary to Petitioner's assertion, each violation was supported by some evidence in the record, namely the testimony from Parole Officer Giddings, the violation reports, and Petitioner's GPS Position History. *See* Doc. 23-1 at 8–11, 26–31, 33–51. Moreover, insofar as Petitioner asserts that "only the Governor, not [the] parole board, may revoke" his parole, his claim fares no better. (Doc. 25 at 7). As the state habeas court properly concluded, the Board had the authority to revoke mandatory supervision under TEX. GOV'T CODE § 508.0441(a) (5). Doc. 20-3 at 85.

In his reply, Petitioner seeks to expand on his claim of "inadequate predeprivation notice" of "conditions and penalties." (Doc. 30 at 16). He asserts that he "did not receive adequate notice regarding forfeiture of calendar time [also known as street-time credit] should mandatory supervision be revoked when acceptance of conditions are refused and petitioner is nevertheless released to mandatory supervision." *Id.* He also states that he "reasonably believed that because he refused to agree to th[e] forfeiture of calender [sic] time, should mandatory supervision be revoked, he would retain time on mandatory supervision." *Id.* at 17-18. However, as noted in claim two below, Petitioner had adequate notice of all conditions of supervised release and the punishment, including the forfeiture of street-time credits. The fact that he refused to sign and agree to be bound by the conditions contained in his release documents does not exempt him from the consequences of violating such conditions.

Moreover, as the state habeas court found:

> [A]pplicant's street time credit was properly forfeited upon the revocation of his mandatory supervision. Because applicant is a person described by section

---

[5] Although *Villareal* involved the revocations of a federal parole, it is relevant because it applied the Supreme Court's decision in *Morrissey*.

> 508.149(a) of the Government Code, he is not entitled to credit against the
> remaining portion of his sentence for the amount of time he spent on mandatory
> supervision. *See* TEX. GOV'T CODE ANN. §§ 508.149(a)(1),(6); 508.283(b) (West
> 2006).

Doc. 20-3 at 84.

In addition, Petitioner erroneously cites *Meza v. Livingston*, 607 F.3d 392, 401 (5th Cir. 2010), for the proposition that "parolees are owed more process than inmates," and before a "deprivation can occur a person must first be informed and . . . receive notice." (Doc. 30 at 17). Unlike Petitioner, *Meza* involved a prisoner who had <u>not</u> been convicted of a sexual offense and, thus, had "a liberty interest created by the Due Process Clause in freedom from sex offender classification and conditions." *Id.* at 401 (quoting *Coleman v. Dretke*, 395 F.3d 216, 222 (5th Cir. 2004)). *Meza* reiterated that "when an individual [as the Petitioner in this case] is convicted of a sex offense, no further process is due before imposing sex offender conditions." *Id.*[6]

Petitioner has failed to demonstrate that the state habeas court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Accordingly, his first claim fails.

<u>Substantive Due Process</u> (Claim 2)

Because Petitioner refused the "contractual terms and conditions of his supervision," he contends the revocation of his supervision violated his substantive due process rights. (Doc. 25 at 7). The state habeas court, however, rejected this claim.

> The Court finds no merit to applicant's claim that his supervised release was
> improperly revoked because he did not sign and agree to be bound by the
> conditions contained in his release documents. Applicant was not required to sign
> any release contract before release on mandatory supervision, and his release was

---

[6] Because Petitioner's inadequate-predeprivation-notice claim wholly lacks merit, the undersigned denies, contemporaneous with this recommendation, his motion for leave to file a supplemental reply brief to develop the claim further. (Doc. 32 at 1-2).

> subject to the terms, conditions, and special conditions provided, regardless of his execution of the subject document. *See* TEX. GOV'T CODE ANN. § 508.154(c).

(Doc. 20-3 at 85-86).

Petitioner has failed to demonstrate that the state court's denial of this claim was unreasonable. As Respondent aptly notes, section 508.154 draws a distinction between the conditions for parole and the conditions of mandatory supervision. Only the terms and conditions for parole are a contract, which require a signature as a pre-condition to release. Thus, this claim is denied.

Serving Sentence in Installments (Claim 3)

Next, Petitioner contends that the revocation of his supervised release has forced him to serve his sentence in installments and has extended his incarceration "keeping him in illegal bondage." (Doc. 25 at 7). He claims violations of the Thirteenth Amendment and the Anti-Peonage Act, 42 U.S.C. § 1994. *Id.* The state habeas court also denied this claim:

> The Court finds no merit to applicant's claim that he is being forced to improperly serve his sentence in installments. The rule against installments does not preclude the interruption and subsequent resumption of a sentence when the interruption is the prisoner's fault, such as when parole or mandatory supervision is violated. *See Free v. Miles*, 333 F.3d 550, 553–54, n.7 (5th Cir. 2003) (per curiam).

(Doc. 20-3 at 86).

Petitioner cannot demonstrate that the state court's denial of this claim was unreasonable. Any interruption in his sentence was a direct consequence of the violation of his supervised release term, which is directly attributable to Petitioner. Thus, the *Free v. Miles* prohibition against serving a sentence in installments is clearly inapplicable. *See Estes v. Thaler*, No. 4:11-CV-1012, 2011 WL 1427980 *2 (S.D. Tex. Apr. 13, 2011); *Williams v. Quarterman*, No. 3:07-CV-0703-L, 2009 WL 1514687 *6 (N.D. Tex. May 29, 2009). Accordingly, this claim fails.

Ex Post Facto Clause (Claim 4)

Lastly, Petitioner asserts the Board incorrectly applied "today's laws to" his "sentence . . . mandatory supervision conditions, revocation [of supervised release], and revo[cation of] good conduct time credits," violating the Ex Post Facto Clause. (Doc. 25 at 8). The state habeas court rejected each of these contentions:

> 2. The Court finds that applicant's good conduct time was properly forfeited upon the revocation of his mandatory supervision. Texas law provides that when an inmate's parole or mandatory supervision is revoked, the inmate forfeits all good conduct time previously accrued prior to his release. *See* TEX. GOV'T CODE ANN. § 498.004(b).
>
> 3. The Court finds no merit to applicant's claim that the Board lacked authority to revoke his supervised release. Texas law provides that board members and parole commissioners shall determine which inmates are to be released on parole or mandatory supervision, as well as make determinations regarding the continuation, modification, and revocation of parole or mandatory supervision. *See* TEX. GOVT. CODE ANN. §§ 508.0441(a)(1),(4).
>
> 4. The Court finds that the Board's application of current law in revoking his mandatory supervision and determining his time credits does not violate the ex post facto provisions of the state or federal constitutions. Applicant's revocation has not caused him to be prosecuted twice for the same offense or to endure a punishment more severe than that prescribed by law when the criminal act occurred. Applicant still must serve the same twenty-five-year sentence imposed by the trial court and permitted by Texas law at the time of the offense. Likewise, because good time credit applies only for eligibility for parole or mandatory supervision and has no effect on the length of sentence imposed, his punishment has not been affected by the forfeiture of good time. *See Ex parte Hallmark*, 883 S.W.2d 672, 674 (1994).

(Doc. 20-3 at 84-85).

Petitioner has failed to show that the state court's denial of this claim was unreasonable. To constitute a violation of the Ex Post Facto Clause a change in law "must be both retroactive and to a prisoner's detriment." *Hallmark v. Johnson*, 118 F.3d 1073, 1077-78 (5th Cir. 1997); *see also*, *Lynce v. Mathis*, 519 U.S. 433, 441 (1997) (quoted cases omitted) ("To fall within the

ex post facto prohibition, a law must be retrospective -- that is, 'it must apply to events occurring before its enactment'--and it 'must disadvantage the offender affected by it,' by altering the definition of criminal conduct or increasing the punishment for the crime."). Petitioner cannot meet either of the above elements. With respect to his sentence, he has not "endured a punishment more severe than that assigned by law when the criminal act occurred." *Hallmark*, 118 F.3d at 1077 (citing *Weaver v. Graham*, 450 U.S. 24, 30 (1981)).

In addition, the newly imposed conditions of supervised release -- specifically the Super Intensive Supervision Program (SSIP) conditions such as electronic monitoring and not being "permitted to enroll in higher education or trade school, use a computer, or be where children gather" (Doc. 30 at 11) -- do not violate the Ex Post Facto Clause because they do not increase an offender's punishment. *See Cruz v. Texas Parole Div.*, 87 F. App'x 346, 347 (5th Cir. 2004) (unpublished per curiam) (citing *Vineyard v. Keese*, 70 F.3d 1266, *2 (5th Cir. 1995) (unpublished per curiam) (holding that changes in Texas parole laws imposing electronic monitoring, urinalysis, driving restrictions and curfew did not constitute an ex post facto violation). The United States Supreme Court has also recognized that restrictive conditions of supervised release imposed on sex offenders are not intended to be punitive and serve important non-punitive goals and, thus, do not violate the Ex Post Facto Clause. *See Smith v. Doe,* 538 U.S. 84, 103–106 (2003). The United States Court of Appeals for the Fifth Circuit has reached the same conclusion with respect to conditions of supervised release typically imposed in Texas. *See Rieck v. Cockrell*, 321 F.3d 487, 488 (5th Cir. 2003) (per curiam) (holding that Texas statute requiring convicted sex offender to attend sex offender counseling, enacted after the petitioner was convicted and sentenced, was not intended to be punitive and served important non-punitive goals, and thus, did not violate the Ex Post Facto Clause).

Likewise, the forfeiture of previously earned good-time credits, as a result of the revocation of supervised release, does not rise to an ex post facto clause violation because there has been no increase in Petitioner's punishment. Since 1977, Texas law has provided for the automatic forfeiture of previously-earned good time credits "[u]pon the revocation of parole or mandatory supervision." TEX. REV. CIV. STAT. ANN. art. 6181-1, § 4, now TEX. GOV'T CODE ANN. § 498.004(b) (West 2013); *Ex parte Henderson*, 645 S.W.2d 469, 471 (Tex. Crim. App. 1983) (quoting from 1977 statute and noting that good time credit is not a right, but a privilege which may be forfeited). Good-time credits have also applied only to an inmate's eligibility for release on mandatory supervision or parole, and not to the length of his sentence. *Id.* While in 1983, as Petitioner suggests, the director had the discretion to restore forfeited good-time credits within 90 days of re-incarceration (Doc. 30 at 9-10), removing the director's discretion to restore forfeited good-time credits following revocation of supervised release did not increase Petitioner punishment. *See Hallmark*, 118 F.3d at 1078-1079 (addressing the removal of a similar provision relating to restoration of forfeited good-time credits as a result of a disciplinary violation, and holding that because good-time credit has no effect on the length of sentence imposed, an inmate's punishment is not increased by the forfeiture of previously earned time credits). Accordingly, as Petitioner's punishment has not been increased by the change in law, no ex post facto violation has occurred.

In sum, Petitioner has failed to demonstrate that the state court's denial of this claim was unreasonable. Accordingly, his fourth claim fails.

Evidentiary Hearing Not Required

Petitioner requests an evidentiary hearing. (Doc. 30 at 19). However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on

the merits." *Cullen v. Pinholster,* ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011); *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) (same rule applies to factual determinations under section 2254(d)(2)). Here, as in *Pinholster*, the petition concerns only claims under section 2254(d)(1) that were adjudicated on the merits in state court. And, as discussed above, Petitioner cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court. Therefore, Petitioner is not entitled to a federal evidentiary hearing.

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that the petition for writ of habeas corpus be **DENIED**.

SIGNED September 30, 2013.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE